UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10276-RWZ

MAC S. HUDSON

v.

STEVEN O'BRIEN, *et al.*

MEMORANDUM OF DECISION

July 21, 2010

ZOBEL, D.J.

Plaintiff Mac Hudson is an inmate at the Old Colony Correctional Center ("OCCC"), a Commonwealth correctional facility.[1]  He was found guilty of disciplinary violations in two proceedings in November of 2008.  The first involved allegations that Hudson made a three-way phone call in violation of prison regulations.  103 Mass. Code Regs. 482.06(3)(b).  The second involved "homemade art pillows" that Hudson included in two mailings, one of which was addressed to an attorney.  (Am. Compl. ¶ 12, Docket # 30.)[2]  The pillows were discovered when the outgoing mail was subjected to a fluoroscope examination and then opened in Hudson's presence.  The disciplinary hearing officer concluded that the pillows were made from Hudson's bedding and therefore contraband.  103 Mass. Code Regs. 403.12; see id. at

_____

[1]The court takes as true all well-pleaded facts in the complaint.  Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009).

[2] Paragraph twelve is identified as "!!" in the amended complaint but this memorandum refers to the paragraph as "12" in conformity with the numbering scheme applied to the other paragraphs in the complaint.

481.11(2).  The parties agree that Hudson received sanctions of $8.72 in restitution and 30 days loss of telephone privileges but dispute whether he also lost 7.5 days of good time.  (See Disciplinary Report, Docket # 30 Ex. 1 at 13-14.)

Hudson now brings suit under 42 U.S.C. § 1983 against Harold Clarke, the commissioner of the Department of Corrections, Steven O'Brien, then superintendent at OCCC, Ernest Therien and Justin Prario, the hearing officers who presided over Hudson's disciplinary hearings, and Kevin Moriera and Michael Carton, two prison employees who were involved in the inspection of Hudson's outgoing art pillow mailings.  He claims that the disciplinary proceedings did not provide due process; the search of his outgoing legal mail and the opening of five other "privileged" incoming letters without his explicit consent violated the First, Sixth, and Fourteenth Amendments; the three-way calling restriction violates the First and Fourth Amendments; and OCCC inmates are denied equal protection under the law because inmates at a county jail are subject to less restrictive telephone usage policy.  He also brings a state law claim that his due process rights under the Massachusetts Declaration of Rights were violated and he seeks a declaratory judgment that defendants engaged in conduct contrary to prison regulations.  See Mass. Gen. Laws. ch. 30A, § 7.  Defendants move to dismiss the § 1983 federal claims and ask the court to decline jurisdiction over the state law claims.

I.    **Analysis**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The facts

must allow the court to draw a reasonable inference that defendant is liable for the

alleged misconduct.  Id.  A simple recitation of elements, or statements of legal

conclusion, will not suffice.  Id.

      **A.**    **Due Process**

      Hudson argues that he was denied due process of law in his disciplinary

hearings.  Due Process Clause protections apply to Hudson's disciplinary proceedings

if he was deprived of a protected liberty interest.  See generally Sandin v. Conner, 515

U.S. 472, 483-84 (1995).  Hudson has a protected liberty interest in "good time" credit,

McGuinness v. Dubois, 75 F.3d 794, 797 (1st Cir. 1996), but likely lacks such an

interest in 30 days of telephone privileges and $8.72 in restitution, see Sandin, 515

U.S. at 484 (finding a protected liberty interest, in the general instance, when a

sanction imposes "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life").  The existence of a liberty interest therefore turns on

a factual dispute which, for the purposes of a motion to dismiss, must be resolved in

Hudson's favor.  The court proceeds under the assumption that he lost good time and

was entitled to due process.

      If a prison disciplinary hearing may result in the loss of good time credit, due

process dictates that "the inmate must receive: (1) advance written notice of the

disciplinary charges; (2) an opportunity, when consistent with institutional safety and

correctional goals, to call witnesses and present documentary evidence in his defense;

and (3) a written statement by the factfinder of the evidence relied on and the reasons

for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). The disciplinary decision must be supported by "some evidence from which the conclusion of the [hearing officer] could be deduced." Id. at 455 (internal quotation marks omitted).

It is apparent from the complaint and plaintiff's exhibits that the disciplinary hearings were conducted with due process. Hudson received written notice of both hearings, he had the opportunity to offer evidence and present a defense, and the hearing officer issued a written decision. (Am. Compl. ¶¶ 31, 40; R. of Disciplinary Hr'gs, Docket # 40 Ex. 1 at 6-14.) The hearing officers' conclusions were supported by testimony, the contraband art pillows, and a recording of the three-way phone call. Id.

## B.    Inspection of Privileged Mail

Hudson asserts that six pieces of "privileged" mail were inspected in violation of his First, Sixth, and Fourteenth Amendment rights. (Compl. ¶¶ 12-28; Pl.'s Mem. of Law in Opp'n 13, Docket # 39.) Only one mailing, the letter from Hudson to his attorney which contained the art pillow, is described in any detail. The other five mailings are identified only by the sender: the clerk of court, the U.S. Marshal, an unidentified city councillor, and Hudson's parole attorney at a Northeastern University law clinic. There is no description of the contents.

### 1.    First Amendment

Inmates retain their First Amendment right to both send and receive mail, although that right is subject to regulation. Restrictions on outgoing correspondence must be generally necessary to protect one or more legitimate governmental interests

4

unrelated to the suppression of expression.  Thornburgh v. Abbott, 490 U.S. 401, 408-09 (1989).  Restrictions on incoming mail are subject to either the same "generally necessary" standard or, if the mail was prepared for a general audience (such as books, magazines, and commercial mailings), need only be reasonably related to legitimate penological interests.  Id. at 413.   As both standards permit a prison to inspect correspondence for contraband without violating the First Amendment, see, e.g., Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding regulation that permitted inmate mail to be inspected and read), the inspection of Hudson's mail did not violate the First Amendment.

> ### 2.        Sixth Amendment

Correspondence with counsel, at least in criminal matters, also implicates the Sixth Amendment right to counsel.  While the outer boundaries of this right have not been mapped out, a couple of limitations are clear.  First, the possibility that communications may contain contraband warrants prison officials inspecting the communications, including letters from attorneys.  Wolff v. McDonnell, 418 U.S. 539, 577 (1974).  Second, prison officials must inspect attorney-client communications while preserving the inmates' expectation of attorney-client confidentiality, such as by opening attorney communications in the presence of the inmate so that the inmate can be sure the inspection does not include reading the communication.  See id.; Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003).

Two of the disputed mailings were communications between Hudson and an attorney: (1) the letter containing the art pillow; and (2) a letter from his parole attorney

at the Northeastern University law clinic.  Hudson admits that the letter to his attorney contained a contraband art pillow and that the letter was opened and inspected in his presence.  (Am. Compl. ¶¶ 12, 14.)  This inspection for contraband in Hudson's presence did not violate his rights.  Wolff, 418 U.S. at 577.  While prison regulations additionally specify that privileged mail is to be opened by the inmate, not merely in his presence,103 Mass. Code Regs. 481.12(2), that requirement is not grounded in the Constitution.

The letter from his parole attorney at Northeastern was, he asserts, opened and read outside of his presence.  While plaintiff says the envelope was marked "legal mail" (Am. Compl. ¶ 24), defendants assert that no attorney name was listed.  Regardless, plaintiff has not stated a Constitutional claim.  Non-attorney communications from a law clinic are not entitled to Sixth Amendment protection, and if the letter was from an attorney but was not externally identified as such, the inspection was no Sixth Amendment violation.  If an attorney's name was listed on the envelope, the opening of this single letter, in violation of prison policy, 103 Mass. Code Regs 481.12, and with no alleged injury, is but an isolated incident and, alone, insufficient to state a Constitutional claim.  See Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (holding that an isolated instance of opening confidential legal mail, without evidence of improper motive or an injury, does not give rise to a Constitutional violation); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (same).

### 3.    Fourteenth Amendment

Restrictions on correspondence, to the extent they limit access to the courts, may violate a state prison inmate's Fourteenth Amendment due process rights.  A viable access-to-the-courts due process claim requires a showing of actual injury to that due process right.  Lewis v. Casey, 518 U.S. 343, 349-50 (1996).  As Hudson does not allege that the opening of his legal mail "hindered his efforts to pursue a legal claim," he fails to state a due process claim.  Id. at 351.

### C.    The Telephone Policy

Hudson's argument that the prison policy prohibiting 3-way calling violates his Constitutional rights can be quickly dispatched.  Assuming, arguendo, that this regulation on telephone calling infringes on his rights, the regulation is still permissible because it is reasonably related to legitimate penological interests.  Turner v. Safley, 482 U.S. 78, 89 (1987).  The Commonwealth has an indisputably legitimate concern that prisoners will use the telephone to engage in illicit behavior and, therefore, an interest in knowing to whom the prisoner speaks.  See, e.g., Pope v. Hightower, 101 F.3d 1384-85 (11th Cir. 1996) (upholding prison policy limiting inmate phone calls to list of 10 numbers of the inmate's choosing, changeable twice yearly); Cacicio v. Sec'y of Pub. Safety, 665 N.E.2d 85, 90-91 (Mass. 1996) (applying Turner and upholding inmate telephone usage regulations).  Prisoners could thwart that interest by using three-way calling to speak with someone at a number other than the one dialed. A prisoner is still able to communicate through non three-way calls, letters, and visitation, subject to other reasonable regulation.

### D.    Equal Protection

Hudson argues that he has been denied equal protection under the law because inmates at the Suffolk County Jail in South Bay, Massachusetts, can update their 15 number phone list monthly while Hudson and the inmates at OCCC can do so only quarterly.  <u>See</u> 103 Mass. Code Regs. 482.06(3) (limiting inmate telephone calls to 15 numbers of the inmates's choosing, five of which are reserved for attorneys); <u>id.</u> at 482.09 (setting minimum standard of quarterly updates to 15 number list).  This argument lacks merit.  Inmates at OCCC are neither a protected class nor similarly situated with the inmates at the Suffolk County Jail.  <u>See</u> <u>Hennessey v. City of Melrose</u>, 194 F.3d 237, 244 (1st Cir. 1999).  The Suffolk County Jail is operated by Suffolk County, not the Department of Corrections, <u>see</u> Mass. Gen. Laws. ch. 125, §§ 1(f), (n), and the regulations promulgated by the Department of Corrections establish only the "minimum standards" for county jails, <u>id.</u> at ch. 127, §1(A).

### E.      State Law Claims

No federal claims survive defendants' motion to dismiss.  The court declines jurisdiction over plaintiff's state law claims.  <u>See</u> 28 U.S.C. § 1367(c).

**II.     Conclusion**

The motion to dismiss plaintiff's § 1983 federal claims and decline jurisdiction over the state law claims (Docket # 33) is ALLOWED.  The motion for a hearing (Docket # 37) is DENIED.  The motion for an extension of time (Docket # 42) is ALLOWED.


    July 21, 2010                              /s/Rya W. Zobel
          DATE                                RYA W. ZOBEL
                           UNITED STATES DISTRICT JUDGE